UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PAUL A. BORDIERI and ANDREA J. COSTA, Trustees of JACKSON CONSTRUCTION COMPANY, a Massachusetts Business Trust, PAUL A. BORDIERI, Individually<br><br>Defendants,<br><br>and<br><br>SOVEREIGN BANK, NA, APPLETON PARTNERS, INC. and CAMBRIDGE APPLETON TRUST, NA,<br><br>Trustee Process Defendants. | C.A. No. 05-11397 NMG |

**UNITED STATES FIDELITY & GUARANTY COMPANY'S OPPOSITION TO DEFENDANTS' MOTION TO VACATE OR MODIFY TRUSTEE ATTACHMENTS**

The Plaintiff, United States Fidelity & Guaranty Company ("USF&G"), hereby opposes the Defendants' Motion to Vacate or Modify Trustee Attachments. As grounds for this Opposition, USF&G states that, in accordance with Rule 64 of the Federal Rules of Civil Procedure, Rule 4.2 of the Massachusetts Rules of Civil Procedure, and Massachusetts General Laws Chapter 246, it satisfied the Court that there is a substantial likelihood that (1) USF&G will recover judgment against Jackson and Bordieri in an amount equal to or greater than the amount of the attachment, and (2) there is no liability insurance available to satisfy the judgment. The

Defendants' Motion fails to set forth any facts or law to warrant a dissolution and, therefore, the Motion must be denied.

## LEGAL STANDARD

An attachment, whether by trustee process, a bill to reach and apply, or any other means, is appropriate whenever the plaintiff can prove likelihood of success in recovering judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment, over and above any liability insurance shown by the defendant to be available to satisfy the judgment. See Anderson Foreign Motors, Inc. v. New England Toyota Distributors, Inc., 475 F. Supp. 973, 978 (D. Mass. 1979) ("The conditions for issuance of a writ of attachment are set forth in Mass. R. Civ. P. 4.1(c), which requires that the plaintiff show 'a reasonable likelihood that (he) will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.'"); Debreceni v. Route USA Real Estate, Inc., 773 F. Supp. 498, 499 (D. Mass. 1990).

Trustee process is a statutory procedure which enables a creditor to attach monies, goods or credits of a debtor which are in the possession of a third person. Mass. Gen. Laws ch. 246, § 24, provides that "[m]oney or any other thing due to the defendant" may be attached even before it has become payable. As such, trustee process is a remedy "corresponding or equivalent" to those remedies enumerated in Fed. R. Civ. P. 64[1]. While Chapter 246 requires that a bond be

---

[1] Rule 64 of the Federal Rules of Civil Procedure provides:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualification: (1) any existing statute of the United States governs to the extent to which it is applicable; (2) the action in which any of the foregoing remedies is used shall be commenced and prosecuted or, if removed from a state court, shall be prosecuted after removal, pursuant to

2

posted in some cases, where money is due under a written contract, there is no need to post a bond under the statute. See Mazzola v. Kurkjian, 361 Mass. 886 (1972); Ricciardi & Sons Const., Inc. v. Oman Realty Associates Trust, 359 Mass. 755 (1971).

Dissolution of a trustee process attachment granted *ex parte* is governed by Mass. R. Civ. p. 4.2(h). Under this rule, the initial burden lies with the defendant to introduce sufficient testimony to challenge any finding upon which the *ex parte* order rests. See Mass. R. Civ. P. 4.2(h); 6 Smith and Zobel, § 4.1.20; Montague Corporation v. Simon Worldwide, Inc., 2001 WL 1226854 (Lauriat, J.). Only if the defendant satisfies this burden will the burden shift back to the plaintiff to justify the attachment. Id. This Court has held that claimed financial hardship does not suffice to enable the Court to dissolve or modify an attachment. See Commercial Printers of Connecticut v. Letter-Men Publishing Co., 1988 WL 45403 (Collings, J., May 5, 1988). In fact, the Court held:

> ... the defendant has provided no case law or precedent to support the contention that the Court is empowered to dissolve or reduce an attachment due to financial hardship. The only case construing the Rule which has been cited is Burke v. Guiney, 700 F.2d 767, 773 (1st Cir. 1983) in which the First Circuit noted at a hearing on a motion for trustee process held pursuant to Rule 4.2(i), the Court may consider whether an "... attachment was necessary to secure a judgment." Id. This statement would seem to indicate that a judgment debtor's precarious financial state is grounds to approve an attachment by trustee process rather than grounds to modify or dissolve an attachment.

### ARGUMENT

In this case, the Defendants failed to set forth any competent evidence to challenge any finding upon which the *ex parte* attachment rests. To the contrary, the Defendants simply inundated the Court with irrelevant facts in an effort to confuse the matter. Noticeably absent from the Motion are affidavits from individuals such as Samuel Starr regarding an alleged

---

these rules. The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.

conversation with Scott Spearing, or financial records to substantiate the Defendants' claim of financial strength. As evidenced by the Affidavit of Scott Spearing, filed herewith, any statements submitted to the Court indicating that Mr. Spearing or St. Paul Travelers were aware, at any time, that Mr. Bordieri had any alleged adequate justification or right to take Jackson's assets in the form of Securities then held in the so-called "Appleton Account", or that Mr. Bordieri or anyone acting on his behalf had indicated that Mr. Bordieri had agreed to hold them for the benefit of Jackson or St. Paul, is false. See Affidavit of Scott S. Spearing, ¶ 11.

As evidenced by the detailed facts set forth in the Plaintiff's Motion for Ex Parte Attachment by Trustee Process and the Affidavit of James E. Mack, both of which are incorporated herein by reference, the terms of the Master Surety Agreement make clear that Jackson must indemnify and hold USF&G harmless for any amounts USF&G pays to third parties to satisfy Jackson's obligations to those third parties. That indemnity/hold harmless obligation includes a duty by Jackson to advance funds to USF&G to cover expected losses. Jackson and Mr. Bordieri made certain financial disclosures regarding the status of projects on which USF&G had executed bonds. See Affidavit of James E. Mack, ¶ 31. Included among these disclosures are what Jackson projected to be funding shortfalls on six of the eight bonded projects. The total funds shortfall on these Projects is $3,492,778.

While Jackson and Mr. Bordieri made allegations that the funds shortfall may be reduced by certain affirmative claims that Jackson may have against third parties, there has been no evidence presented by affidavit or otherwise as to the true values of these claims, the likelihood of Jackson prevailing on these claims or any information as to the cost associated with prosecuting these claims. In essence, there is no evidence that the funds shortfall will not be realized in its entirety.

Defendants' own papers admit that, even if Jackson realizes the full value of all of its alleged claims, there will be a fund shortfall on the bonded projects of at least $1.9 million. See Defendants' Memorandum, pg. 6. Based upon these disclosures, USF&G expects to pay claims totaling at least the amount of the projected shortfall. Because USF&G's demand for collateral or advancement of funds or other security has not been complied with by Jackson, the security it has obtained by the Trustee Process action must remain in effect as to both Jackson and Mr. Bordieri.

Mr. Bordieri, faced with the need to request financial assistance of USF&G for Jackson to complete its work, decided to take assets – in the form of the Appleton securities account – out of Jackson to defraud USF&G. The timing of his actions allow for no other logical conclusion. This action not only constituted a violation of the Retention of Surplus Agreement by Jackson, but also constituted a fraudulent conveyance as to USF&G. Among the remedies available the USF&G because of this fraudulent transfer is the attachment of the transferred asset of other assets of the transferee. M.G.L. c. 109A § 8(a)(2). Therefore, USF&G is reasonably likely to recover against Mr. Bordieri in the amount of $1,984,134.64.

In their Motion, the Defendants attempt to cloud the two clear issues (that Jackson will incur a loss on its bonded projects and that Mr. Bordieri wrongfully took assets that belonged to Jackson for his own use) with allegations that USF&G is wrongfully withholding payments to Jackson on two unrelated projects. These two projects involve work Jackson was to perform for USF&G under Completion Agreements. In his Affidavit, Mr. Bordieri states, without supporting facts or documents, that Jackson's financial problems result entirely from USF&G's alleged failure to pay Jackson on these two Completion Agreements. As evidenced by the Affidavit of James M. Peters, Jr., filed herewith, USF&G does not owe Jackson approximately $2.7 million on the Completion Agreements as Mr. Bordieri claims in his Affidavit. To the contrary, as

evidenced by Mr. Peters' Affidavit, Jackson has failed to fulfill the terms and conditions of the Completion Agreements by or among other things failing to timely complete the projects, failing to pay subcontractors and/or suppliers and failing to correct Jackson's own defective work. Mr. Peters' Affidavit outlines facts and circumstances relating to the Agreements and refutes in detail each of the allegations made by Mr. Bordieri. Other than Mr. Bordieri's self-serving statements, the record before this Court is devoid of any evidence to support Mr. Bordieri's or Jackson's position. Accordingly, there is no basis to dissolve or modify the Trustee Process Attachments and the Court should allow them to remain in full force and effect.

**WHEREFORE**, USF&G respectfully requests that this Court take the following action:

1. Deny the Defendants' Motion to Vacate or Modify Trustee Attachments; and
2. Order such other and further relief as is just and appropriate at law or in equity.

UNITED STATED FIDELITY AND GUARANTY COMPANY,
By its attorneys,

_____
Kevin J. O'Connor    BBO 555248
Scott S. Spearing    BBO 562080
HERMES, NETBURN, O'CONNOR
    & SPEARING, P.C.
111 Devonshire Street, Eighth Floor
Boston, MA  02110
(617) 728-0050
(617) 728-0052 (F)

Dated: July 25, 2005

G:\DOCS\JRF\CLIENTS\St. Paul Travelers\Pleadings\Opposition to Motion to Dissolve Trustee Attachment.doc

I hereby certify that a true copy of the above document was served upon (each party appearing PRO SE and) the attorney of record for each other party by mail (by hand) on July 25, 2005.

_____