United States District Court
District of Massachusetts

United States Fidelity and Guaranty Company, )
)
                Plaintiff                   )
)
v.                                        )
Paul A. Bordieri and Andrea Costa,          )
Trustees of Jackson Construction Company, )
Paul A. Bordieri, Individually,                )
)
                Defendants         )    CASE # 05 - 11397-NMG
)
and                                   )
)
Sovereign Bank of New England, NA,       )
Appleton Partners, Inc. and                  )
Cambridge Appleton Trust, NA,             )
)
       Trustee Process Defendants   )

## Answer And Counterclaim Of Defendant Paul A. Bordieri, Individually And As He Is Trustee Of Jackson Construction Company

Defendant Paul A. Bordieri (Bordieri), Individually and as Trustee of Jackson Construction Company (Jackson), a Massachusetts Business Trust, answers plaintiff's complaint as follows. To the extent that the first unnumbered paragraph of the complaint requires any answer, Bordieri admits that USF&G has executed surety bonds guaranteeing obligations of Jackson under construction contracts, admits that Jackson notified USF&G that, without payment of monies owed by USF&G to Jackson on completion contracts, Jackson was unable to perform, and Bordieri denies the remaining averments of the first unnumbered paragraph.

1.      On information and belief, admitted.

2. Bordieri admits that Andrea J. Costa was, but is no longer, a Trustee of Jackson Construction Company. Bordieri admits the remaining averments of paragraph 2.

3. Bordieri admits the averments of the first sentence of paragraph 3. Bordieri denies he is one of the trustees of Jackson, but rather states he is the sole trustee, and admits the remaining averments of paragraph 3.

4. Bordieri admits the averments of the first sentence and denies the second sentence of paragraph 4.

5. Admitted.

6. Admitted.

7. Admitted.

8. Bordieri does not challenge jurisdiction.

9. Bordieri does not challenge venue.

10. Admitted.

11. Bordieri admits that Jackson and USF&G entered into an agreement on May 20, 1997 relating to the relationship between the parties. Bordieri denies the remaining averments of paragraph 11.

12. Bordieri admits that the document attached as Exhibit A to the complaint is a true copy of a Master Surety Agreement executed by Bordieri individually, as Trustee of Jackson and as President of Jackson. The Master Surety Agreement is a document in writing which speaks for itself.

13. Bordieri admits that he signed a Retention of Surplus Agreement dated May 20, 1997, a true copy of which is attached as Exhibit B. The Retention of Surplus Agreement is a document in writing which speaks for itself.

14. Bordieri admits the first sentence of paragraph 14. Bordieri is without sufficient information to admit or deny the second sentence of paragraph 14. Bordieri admits that Jackson prepared and provided annual audited financial statements to USF&G and is without sufficient information to admit or deny the remaining averments of the third sentence of paragraph 14.

15. Bordieri is without information sufficient to admit or deny the averments of paragraph 15.

16. Bordieri admits that portions of Jackson's audited financial statements for the years ending December 31, 2001, 2002 and 2003, are attached to the complaint as Exhibit C. These documents are in writing and speak for themselves. Bordieri is without information sufficient to admit or deny the remaining averments of paragraph 16.

17. Bordieri is without information sufficient to admit or deny the averments of paragraph 17.

18. Bordieri is without information sufficient to admit or deny the averments of paragraph 18.

19. Bordieri is without information sufficient to admit or deny the averments of paragraph 19.

20. Bordieri is without information sufficient to admit or deny the averments of paragraph 20, except that Bordieri admits that USF&G had executed bonds on certain Jackson projects and that USF&G had hired Jackson to complete work on two other projects where USF&G's principal had defaulted.

21. Bordieri admits that he notified USF&G that, on account of non-payment by USF&G, Jackson was experiencing financial difficulty, was in need of payments long overdue from USF&G and that it could not continue to perform its work without such payments from USF&G. Bordieri denies the remaining averments of paragraph 21.

22. Bordieri admits that USF&G did not make payments of funds due, but rather demanded to conduct a review of Jackson's financial condition.

23. Admitted.

24. Bordieri admits that he transferred funds which belong to him from an account in the name of Jackson at Appleton to an account in his own name at Appleton. Bordieri admits he did not provide prior notice to USF&G that he was transferring his money into his account. Bordieri admits that the documents attached as Exhibits D and E are true copies of the Appleton Partners Account # A0525 reports and Jackson's trial balance statement for the month ending May 31, 2005, which are documents in writing which speak for themselves.

25. Bordieri admits that he contacted USF&G again stating that Jackson was in need of payments long overdue from USF&G in order to complete work on both the bonded and the completion projects. Bordieri denies the remaining averments of paragraph 25.

26. Bordieri admits that USF&G told him that it wanted to review Jackson's financial condition, Bordieri denies that USF&G stated it would be in order to make a determination on an alleged request for financial assistance. Bordieri is without information sufficient to admit or deny the remaining averments of paragraph 26.

4

27. Bordieri admits the averments of paragraph 27, except that he denies that the funds were included in Jackson's audited financial reports as an asset of Jackson by mistake and that the statements he made were false.

28. Bordieri admits that USF&G, by its representatives, met with Jackson and Bordieri at Jackson's offices in Canton, Massachusetts on June 22, 2005. Bordieri lacks sufficient information to admit or deny the remaining averments of paragraph 28.

29. Admitted.

30. Admitted.

31. Bordieri admits that he and Jackson made certain financial disclosures regarding the status of project to USF&G on projects on which USF&G had executed bonds. Bordieri denies the remaining averments of paragraph 31.

31.(sic) Bordieri denies the averments of the second paragraph numbered 31.

32. Bordieri admits that St. Paul Travelers made a demand for collateral. Bordieri is without sufficient information to admit or deny the remaining averments of paragraph 32.

33. Denied.

## Count I

### Contractual Indemnity

34. Bordieri incorporates by reference his answers to paragraphs 1 through 33 as if stated in full herein.

35. The Master Surety Agreement is a document in writing which speaks for itself.

36. Denied.

37. Denied.

5

38. Bordieri is without information sufficient to admit or deny the averments of paragraph 38.

39. Denied.

40. Denied.

## Count II

### Quiatimet

41. Bordieri incorporates by reference his answers to paragraphs 1 through 40 as if stated in full herein.

42. Bordieri lacks information sufficient to admit or deny the averments of paragraph 42.

43. Denied.

## Count III

### Fraudulent Conveyance

44. Bordieri incorporates by reference his answers to paragraphs 1 through 43 as if stated in full herein.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

## Count V (sic)

### Rescission

49. Bordieri incorporates by reference his answers to paragraphs 1 through 48 as if stated in full herein.

6

50. The Master Surety Agreement is a document in writing which speaks for itself. Bordieri makes no response to USF&G's allegations regarding common law theories.

51. Denied.

52. Denied.

## Count VI

### M.G.L. Ch. 93A, §11

53. Bordieri incorporates by reference his answers to paragraphs 1 through 52 as if stated in full herein.

54. Bordieri admits that USF&G and Jackson are engaged in the conduct of trade or commerce pursuant to the Master Surety Agreement and the bonds. Bordieri denies the remaining averments of paragraph 54.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

## Count VII

### Trustee Process

66. Bordieri incorporates by reference his answers to paragraphs 1 through 58 as if stated in full herein, and notes that there are no paragraphs 59 through 65.

67. - 71. This Count does not apply to Bordieri or to Jackson, and Bordieri makes no answer, except that Bordieri denies that USF&G is reasonably likely to prevail on the merits of its claims or that USF&G will suffer irreparable harm if it is not granted

security against losses under the bonds, as USF&G has not shown that any loss under the bonds has or will occur.

## Count IX

### Injunction

72. Bordieri incorporates by reference his answers to paragraphs 1 through 71 as if stated in full herein.

73. Denied.

74. Denied.

75. Denied.

### FIRST AFFIRMATIVE DEFENSE

The complaint fails to state claims against Bordieri upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff has suffered no damages.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff is estopped by its acts and conduct to assert any claims against Bordieri.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff has materially breached the completion contracts and is therefore disentitled to any relief against Bordieri.

## FIFTH AFFIRMATIVE DEFENSE

Any loss suffered or which might in the future be suffered by USF&G is as a result of the acts or omissions of USF&G for which Jackson and Bordieri are not responsible.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff is guilty of unclean hands and thus is disentitled to any relief in equity.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is guilty of laches.

## COUNTERCLAIM

1. Defendant/Plaintiff-in-Counterclaim, Paul A. Bordieri (Bordieri), is an individual residing in Reading, County of Middlesex, Massachusetts. Mr. Bordieri is trustee of Jackson Construction Company, a Massachusetts Business Trust, President of Jackson and its sole beneficial interest holder.

2. Plaintiff/Defendant-in-Counterclaim United States Fidelity & Guaranty Company (USF&G), is, on information and belief, a Maryland corporation with a principal place of business at One Tower Square, Hartford, Connecticut. USF&G is owned by and controlled by St. Paul Travelers of Hartford, Connecticut.

3. In or about April 1997, Bordieri individually and Jackson Construction Company entered into a Master Surety Agreement with USF&G by which USF&G agreed to provide payment and performance bonds to Jackson in consideration of the payment of premiums and certain other undertakings by Bordieri and Jackson.

4.   In 2000, Bordieri was released from any and all individual liability on the Master Surety Agreement, leaving only Jackson Construction Company as a party with USF&G on the Master Surety Agreement.

5.   Presumably based upon Jackson's financials for the year ending December 31, 2003, USF&G informed Jackson in early 2004 that it intended to cease writing bonds for Jackson. As of the date of notification, Jackson had never been defaulted on a bonded job and the surety had never paid anything on any bonded job. On the contrary, USF&G had received hundreds of thousands of dollars in premiums from Jackson without any liability or damage to USF&G.

6.   Notwithstanding its announcement that it would no longer issue bonds to Jackson, USF&G thereafter engaged Jackson as completing contractor on two projects on which another contractor principal of USF&G had defaulted.

7.   On the Shrewsbury project, Jackson, in order to minimize loss to the surety caused by delayed completion, commenced work on the Shrewsbury project in or about March 2004, months before a completion contract was negotiated and executed, and Jackson expended over a million dollars of its own money without contemporaneous reimbursement from USF&G as it commenced work to complete the Shrewsbury Middle School project.

8.   The Shrewsbury completion contract sum was $8,051,366.72.

9.   Also in May 2004, Jackson and USF&G entered into a completion contract for the Westford Highway Facility on which USF&G's principal had been defaulted.

10.  The not to exceed price on the Westford completion contract was $8,792,501.00.

11. Despite commencing work on the Shrewsbury project in March 2004, Jackson never received payment of any kind from USF&G until June 2004.

12. Jackson was assigned subcontractors by USF&G on the Shrewsbury project. One of these subcontractors was ESCOA, an electrical subcontractor with whom Jackson preferred not to work on account of questions as to its ability and integrity, but USF&G directed the use of ESCOA and informed Jackson that if it elected to use any other electrical subcontractor as a completing electrical subcontractor, then Jackson would have to absorb any differential in cost between the remaining unpaid amount in the ESCOA subcontract and the cost quoted by any other completing subcontractor.

13. The quotations to complete ESCOA's subcontract work were approximately $500,000 more than the amount left in the ESCOA subcontract. Accordingly, Jackson had no alternative but to utilize ESCOA as the completing electrical subcontractor.

14. In August 2004, ESCOA abandoned the job and defaulted. At that time, there was approximately $300,000 left unpaid in the ESCOA subcontract amount.

15. After ESCOA's default and abandonment, Coughlin Electric was engaged by Jackson to assess and complete ESCOA's work.

16. Coughlin identified substantial quantities of ESCOA's work which contained concealed defectives. Coughlin's price to complete and correct ESCOA's work was $1.2 million dollars, approximately $900,000 more than what was left in the ESCOA subcontract balance.

17. Despite the fact that USF&G had failed to disclose to Jackson the concealed defective work, and despite the fact that USF&G directed Jackson to utilize ESCOA as the completing subcontractor solely to save USF&G money, USF&G informed Jackson

that any and all cost over-runs in completing and correcting ESCOA's work was the financial responsibility of Jackson.

18. Further, USF&G received claims from the Town of Shrewsbury identifying delay damages suffered by the Town as a result of the acts and omissions of USF&G's defaulted principal, and the Town so identified the responsibility therefor.

19. USF&G has nevertheless stated to Jackson that these delay damages are to be back charged by USF&G against Jackson.

20. USF&G has further informed Jackson that Jackson is liable for liquidated damages assessed by the Town, in spite of the fact that the Town acknowledges that the delays were caused by the defaulted original contractor rather than Jackson. Further, there is no required completion date in the Jackson completion contract and Jackson is therefore not liable for any such liquidated damages.

21. USF&G has further informed Jackson that it will not make payments of monies due Jackson on the Shrewsbury project because USF&G has not received these monies from the Town of Shrewsbury.

22. The completion contract between Jackson and USF&G does not contain a "pay-if-paid" clause and therefore payment or non-payment by the Town of Shrewsbury to USF&G is irrelevant to USF&G's obligations to make prompt payment (within 20 days of the requisition) to Jackson.

23. Jackson has not received any payment from USF&G on the Shrewsbury project since a payment in December of 2004, representing work performed by Jackson through November 30, 2004.

24. At the same time, USF&G received from the Town and did not pay over to Jackson over $500,000 of contract monies for work performed by Jackson on the Shrewsbury project.

25. As a result of the non-payments by USF&G on the Shrewsbury project since December of 2004, USF&G currently owes Jackson $1,525,979.00 on the Shrewsbury contract balance and an additional $1.2 million dollars on various claims, including the Coughlin Electric claim.

26. As a result of non-payment by USF&G on the completion contracts, Jackson was forced to use its own funds, including funds received by Jackson from owners on the bonded (non-completion) contracts to pay subcontractors and suppliers and Jackson's field labor, superintendents, overhead, etc. from funds received on the bonded jobs.

27. Based upon Jackson's pro-forma financials for the year ending December 31, 2004, Jackson showed a profit for the year of approximately $100,000.00.

28. Accordingly, and after conferring with his corporate counsel, Bordieri determined that he would remove from Jackson accounts certain funds belonging to Bordieri which had been in these accounts since 1997 and which have been augmented by distributions to Bordieri over the years.

29. The initial deposit into the so-called Appleton account was in the amount of $1,186,000.00. This was Bordieri's compensation for the sale of his shares of stock of Jackson Construction Company in 1997 when his former partner, Mr. Phil Jackson, liquidated his interest in the company and received approximately $3.35 million dollars.

30. Because it was convenient to do so, and because Mr. Bordieri wished to have the funds available to Jackson in the event of a financial crisis at Jackson, Bordieri had left the funds in the corporate account in 1997 rather than transferring the funds to his own personal account.

31. Because of the continuing struggle between USF&G and Jackson with respect primarily to the Shrewsbury project, Bordieri did not accomplish the transfer of the funds until April 2005, notwithstanding his decision to do so in January 2005.

32. When Jackson made its financials for the year ending December 31, 2004 available to USF&G as was its custom, it disclosed to USF&G the transfer made by Bordieri.

33. Neither Jackson nor Bordieri made any attempt to conceal the transfer.

34. Despite ample time and opportunity to do so, Mr. Bordieri never attempted to transfer the funds to any location or depository unknown to USF&G.

35. After USF&G retained counsel in this matter, counsel for USF&G was informed by Jackson's corporate counsel that the funds were local and would not be removed from the jurisdiction. Nevertheless, USF&G proceeded ex parte in this matter alleging without any evidence or support that Bordieri's statements regarding the source of the funds and the reason for the transfer were false.

Count I

Breach of Contract

36. Bordieri incorporates by reference his averments in paragraphs 1 through 35 as if stated in full.

37.     USF&G is materially in breach of its payment obligations on the Shrewsbury project, and has wrongfully attributed to Bordieri and Jackson responsibility for damages for which neither Bordieri nor Jackson is responsible, USF&G has wrongully withheld payment of contract balances due to Jackson, USF&G has wrongfully withheld monies received by USF&G on account of Jackson's work, and USF&G has attempted by these and other devices to shift losses it has suffered on the Shrewsbury project to Jackson without justification or basis in fact or in law.

## Count II

### Interference With Contractual Relations

38.     Bordieri incorporates by reference his averments in paragraphs 1 through 37 as if stated in full.

39.     Beginning in April of 2005, USF&G determined that it would put Jackson out of business by refusing to make any payments on the completion contracts and by drying up Jackson's revenue sources from bonded jobs.

40.     To that end, USF&G, on two occasions, wrote to all the owners on the bonded jobs demanding that the owners make no further payments to Jackson, failing which USF&G asserted it would be discharged on the performance and payment bonds.

41.     At the time of these communications to Jackson's owners, Jackson was not in default on any of these bonded contracts.

42.     USF&G's communications with the owners were intended by USF&G to damage materially Jackson's contractual relationships with the owners, to cause the

owners to suspend payments to Jackson, and thereby drive Jackson into default and insolvency.

## Count III

### Violation of M.G.L. Ch. 93A

43. Bordieri incorporates by reference his averments in paragraphs 1 through 42 as if stated in full.

44. The actions of USF&G as aforesaid, including attempting to force losses for which USF&G is liable onto Jackson, attempting to assess damages against Jackson for which Jackson is not liable, materially misstating the position of the Town of Shrewsbury with respect to such damages, refusing to make payments to Jackson when due, refusing to accept responsibility for the ESCOA default and for the cost of completing and correcting ESCOA's concealed defective work, tortiously interfering with the contractual relationships with the owners on the bonded contracts, attempting to completely dry up any and all revenue to Jackson in order to force Jackson into default and insolvency, and proceeding ex parte to seize all operating accounts and the Appleton funds, without which USF&G was fully aware Jackson could not continue to operate, constitute an implemented plan by USF&G to destroy Jackson, to defraud Jackson, to bankrupt Jackson and to seize monies belonging to Bordieri.

45. These actions constitute willful, intentional violations of M.G.L. Ch. 93A, §11.

WHEREFORE, Bordieri demands:

1. That judgment in its favor be entered in his favor on all claims against him by USF&G and that USF&G's claims against him be dismissed;

2.  That the Court enter judgment in favor of Bordieri on Counts I, II and III of the Counterclaim, and further enter judgment against USF&G for not less than double nor more than treble Bordieri's actual damages as a result of the willful and intentional acts and deceptive practices by USF&G in this matter and award Bordieri his attorney's fees, interest and costs as provided by law.

                                                                                   Paul A. Bordieri, Individually and as Trustee of Jackson Construction Company
By His Attorney

Dated: August 1, 2005

_____
Kieran B. Meagher, BBO# 340920
Kieran B. Meagher Associates LLC
92 Montvale Avenue
Stoneham, MA 02180
(781) 246-1101

<u>Certificate of Service</u>

I hereby certify that on this 1st <u>day of August, 2005</u>, I served a copy of the within <u>Answer And Counterclaim Of Defendant Paul A. Bordieri, Individually And As He Is Trustee Of Jackson Construction Company</u> by first-class mail, postage prepaid, to:

Scott S. Spearing, Esq.
Hermes, Netburn, O'Connor & Spearing
111 Devonshire Street, 8th Floor
Boston, MA 02109

Appleton Partners, Inc.
45 Milk Street, 8th Fl.
Boston, MA 02109

Cambridge Appleton Trust, N.A.
45 Milk Street, 8th Fl.
Boston, MA 02109

Sovereign Bank of New England, N.A.
75 State Street
Boston, MA  02109

_____
Kieran B. Meagher