[USF&G Proposed Order]

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **UNITED STATES FIDELITY AND GUARANTY COMPANY,** ) | |
| **Plaintiff,** ) | |
| v. ) | |
| **PAUL A. BORDIERI and ANDREA J. COSTA, Trustees of JACKSON CONSTRUCTION COMPANY, a Massachusetts Business Trust, PAUL A. BORDIERI, Individually** ) | **C.A. No. 05-11397 NMG** |
| **Defendants,** ) | |
| **and** ) | |
| **SOVEREIGN BANK, NA, APPLETON PARTNERS, INC. and CAMBRIDGE APPLETON TRUST, NA,** ) | |
| **Trustee Process Defendants.** ) | |

## PROPOSED ORDER REGARDING THE ESTABLISHMENT OF JACKSON TRUST ACCOUNT

This matter is before the Court on the Motion to Vacate or Modify Trustee Process

Attachments of the Defendants', Jackson Construction Company ("Jackson") and Paul A.

Bordieri ("Bordieri"). After hearing, and in amplification of prior orders of the Court, the

Court enters the following findings and orders:

1. Jackson Construction Company ("Jackson") has entered into bonded construction

   contracts ("Bonded Contracts") with various entities ("Obligees") for the construction of

   building projects ("Bonded Projects") as more fully set forth in a List of the Bonded

   Contracts and Bonds which is attached hereto as *Exhibit A.*

2.    United States Fidelity and Guaranty Company ("USF&G") executed certain Perfor-
      mance Bonds and Labor and Material Payment Bonds (collectively "Bonds") on behalf
      of Jackson in connection with Jackson's Bonded Contracts as more fully set forth in
      ***Exhibit A***;

3.    Jackson has entered into construction contracts ("Non-Bonded Contracts") with various
      entities for the construction of other projects ("Non-Bonded Projects") for which
      USF&G has not executed any Bonds on behalf of Jackson, as more fully set forth in a
      List of Non-Bonded Contracts which is attached hereto as ***Exhibit B.***

4.    On or about April 29, 2005, by a series of transactions, Jackson transferred
      $1,984,134.64 held at Appleton Partners, Inc., out of the control of Jackson and into
      Paul Bordieri's personal account at Appleton;

5.    On July 7, 2005, this Court issued an ex parte order of attachment by trustee process
      on certain property held by Bordieri in the possession of Appleton;

6.    On July 27, 2005, this Court entered an Order reducing the attachment on the funds in
      the possession by Appleton from $1,984,143.64 to $1,884,143.64 and authorizing and
      directing Bordieri to transfer the $100,000 released from attachment to Jackson to be
      used for ordinary operating expenses of Jackson.

7.    On August 3, 2005 and August 10, 2005, this Court allowed joint motions brought by
      USF&G, Jackson and Bordieri and entered interim orders reducing the attachment on
      the funds in the possession by Appleton by $1,000,000 from $1,884,143.64 to
      $884,143.64 and authorizing and directing Bordieri to transfer the $1,000,000
      released from attachment to USF&G to reimburse USF&G for funds it expended (or

2

was about to expend) to pay certain subcontractors and/or suppliers of Jackson for their work at the Lowell Project.

8.   By the close of business on August 19, 2005, Bordieri will order the wire transfer of the remainder of the attached funds, $884,143.64, in the manner set forth in paragraphs 12 and 13 of this Order; Nothing herein shall bar the parties from agreeing to place a portion of these funds in an interest bearing account pending further agreed action by the parties. The terms of this Order shall apply to any such interest bearing funds.

9.   No later than Monday, August 22, 2005, Jackson will make available to USF&G and/or its authorized agents all of Jackson's books, records and accounts for audit and copying in order for USF&G to obtain an overall accounting of Jackson's finances and to determine the status of all Jackson's work. In the future, USF&G shall be permitted access to Jackson's books, records and accounts, after two business days' notice to Jackson, in order to verify Jackson's written accountings and maintain a current overall accounting of Jackson's finances and to determine the status of all Jackson's work.

10.   Jackson shall maintain accurate books, records and accounts showing clearly, among other things, the itemized receipts and disbursements allocable to the Bonded Contracts and the Non Bonded Contracts. The books, records and accounts shall be available for examination by USF&G and its representatives at Jackson's principal office at all times upon two business days notice during regular business hours. USF&G and Jackson are entitled to receive copies of all bank account records of the Jackson Trust Account, of any kind or nature, including canceled checks, bank statements, deposit slips, debit memos, etc.

11.    No later than Friday, August 26, 2005, USF&G will provide to Jackson an accounting of the so-called Standen Completion Contracts involving the Shrewsbury Project and the Westford Project.

12.    Other than as specified in this Order, Jackson shall not transfer any of its assets without fair and proper consideration in the ordinary course of business.

### Jackson Trust Account

13.    Jackson has opened a trust checking account (the "Jackson Trust Account") with the Randolph Savings Bank (the "Bank") in the name of *"Jackson Construction Co.* .

14.    By August 19, 2005, Bordieri will order the wire transfer to the Jackson Trust Account of the amount of $884,143.64 from the Appleton account. USF&G will authorize Appleton to transfer the $884,143.64 to the Jackson Trust Account.

15.    All checks, transfers and, other than Bank origination charges, charges against the Jackson Trust Account shall be required to have two signatures, one signature being that of an authorized representative of Jackson and the other by an authorized representative of USF&G. Jackson and USF&G will work in conjunction with the Bank to establish such other means and methods of transferring funds from the Jackson Trust Account in accordance with the provisions of this Order so long as such means or methods require the consent of both Jackson and USF&G for any withdrawal or transfer of funds from the Jackson Trust Account. Except as otherwise set forth in this Order, USF&G and Jackson are restricted from making any wire transfers, the use of counter-checks or other non-check transfers from the Jackson Trust Account without the express written approval of both parties or by Order of this Court.

16.    Jackson shall maintain possession of the checkbook for the Jackson Trust Account. Jackson shall also receive directly from the Bank all bank statements and the originals of all deposit slips,

4

canceled checks, debit memos, service charges, etc. relating to all Jackson Trust Account activity.
USF&G and Jackson are authorized to obtain from the Bank any information as USF&G or Jackson
may desire with respect to Jackson Trust Account activity. Jackson shall furnish to USF&G copies
of all bank statements, deposit slips, canceled checks, debit memos, service charges, etc. which
Jackson receives from the Bank.

17.     Funds deposited into the Jackson Trust Account may be used only for:

    a.  Payment of amounts due to subcontractors and suppliers and for rental of equipment
        from others, which are actually used in the prosecution of the work under the Non-
        Bonded Contracts ("Non-Bonded Contract Expenses");

    b.  Reimbursement to Jackson of its direct obligations on Bonded Contracts and Non-
        Bonded Contracts;

    c.  Reimbursement to Jackson of its direct labor costs, including all payroll and related
        withholding and accruals for labor which is actually incorporated into the Non-
        Bonded Contracts and Bonded Contracts ("Contract Payroll"); any indirect general
        payroll, related general payroll withholding and accruals ("General Payroll") and
        general ordinary administrative obligations and expenses ("General Overhead") of
        Jackson; and

    d.  Payment of amounts due to subcontractors and suppliers and for rental of equipment
        from others, which are actually used in the prosecution of the work under the
        Bonded Contracts ("Bonded Contract Expenses").

    e.  Nothing contained in this Order shall be construed or interpreted to require that
        USF&G sign any payroll checks issued to Jackson employees.

5

18.    Absent other mutually agreeable arrangements which must be reduced to a written document between Jackson and USF&G or as ordered by this Court, the procedure for the payment of the expenses specified in Paragraph 17 above from the Jackson Trust Account shall be as follows:

Jackson and USF&G will work together to develop estimated expenses the Parties reasonably believe will be withdrawn from the Jackson Trust Account.

On a weekly basis or as otherwise required, Jackson shall provide to the representative of USF&G the following information:

i. A summary sheet listing all of the invoices or expenses to be paid, broken down by Project where specific to a project, showing the party to be paid, the amount to be paid and the total projected payments to all payees. Jackson shall designate on the summary sheet those invoices it believes should receive priority for payment in the event that the funds in the Jackson Trust Account are insufficient to pay all of the invoices submitted for payment. Jackson shall sign the summary sheet, which shall indicate its approval for payment of invoices or expenses described therein and Jackson's request to USF&G for approval of payment of said invoices or expenses;

ii. A copy of each invoice or expense to be paid, showing the Project for which the invoice was incurred, along with a copy of all necessary supporting documentation for the invoice. Invoices for legal services may be redacted to exclude descriptions of legal services provided. Jackson shall represent and

6

warrant in writing that all invoices shown on the summary and all requested payments to be made from the Jackson Trust Account are for the purposes authorized by this Order, and that the amount of any such invoice and/or check is currently due and owing to the payee named therein; and

iii.  If requested by the USF&G, a full or partial waiver and release in a form acceptable to USF&G in the amount of the payment, which must be signed by the payee and returned to USF&G by Jackson.

USF&G shall review all of the invoices and expenses and back-up information provided above and indicate its approval or disapproval on the summary sheet for all of the invoices that USF&G agrees are to be paid from the Jackson Trust Account.  USF&G shall not be obligated to approve the payment of invoices or expenses according to the priorities designated by Jackson on the summary sheet.  USF&G shall not be obligated to approve the payment of any invoices or expenses unless it agrees the invoices reflect unsatisfied obligations of Jackson and the expenses are appropriate.  USF&G shall state with specificity the reasons for its disapproval of any invoice or expense approved by Jackson.

In the event that there are funds sufficient in the Jackson Trust Account to cover those payments which have been approved, an authorized representative of Jackson shall draw a check on the Jackson Trust Account, said check clearly indicating the specific invoices or expenses being paid the  payee, the amount of the check and, where appropriate, the Contract on which the invoices or expenses are being paid, and sign and present the check to an authorized signatory of USF&G for signing. USF&G shall promptly, and in no event longer than one business day, sign and return the check to Jackson.

> On a bi-weekly basis, Jackson shall provide to USF&G a report listing all paid invoices with invoice dates for all Bonded or Non-Bonded Contract Expenses, broken down by Bonded or Non-Bonded Contract.

19.    In the event Jackson requests reimbursement of Contract Payroll, General Payroll and/or General Overhead from the Jackson Trust Account, the estimate submitted to USF&G shall include the following:

> All estimated gross Contract Payroll, including a summary of all estimated employee related withholding obligations and all estimated liabilities to be accrued by Jackson, broken down by Contract; and

> All estimated General Payroll and General Overhead.

20.    On a weekly basis, Jackson shall submit to USF&G for review and signature checks drawn on the Jackson Trust Account for the total sum of the items set forth above, and signed by an authorized signatory of Jackson, clearly indicating the week for which payments will be made. In the event that there are sufficient Funds in the Jackson Trust Account, and upon approval by USF&G, an authorized signatory of USF&G shall promptly sign and mail the check directly to Jackson. USF&G shall state with specificity the reason for disapproval of invoices or expenses approved by Jackson.

21.    Within four (4) days from the close of the week for which payments were made, Jackson shall make available to USF&G certified payrolls and other documents evidencing the expenses for which payments were made, including documents evidencing the payment of all state and federal withholding taxes and union or other employee benefits.

22.    Jackson is responsible for the following: (a) The payment of all Contract Payroll, which includes: (1) Wages and all federal, state and local taxes, union dues, benefits, liens, garnishments

8

and other employee related withholding obligations; and (2) All federal, state and local taxes, union

dues, fringe benefits and other liabilities accrued by Jackson;  (b) The payment of all General

Payroll, which includes: (1) Wages and all federal, state and local taxes, union dues, benefits, liens,

garnishments and other employee related withholding obligations; and (2) All  federal, state and

local taxes, union dues, fringe benefits and other liabilities accrued by Jackson; and (c) The payment

of all General Overhead.  The payment of all obligations and liabilities as set forth in a, b and c

above in a prompt and timely manner and in accordance with all federal, state and local laws,

statutes and regulations.

23.     Proceeds or contract balances from Bonded or Non-Bonded Projects, including claim

settlements shall not be disbursed to officers, shareholders, owners or employees or any other

person or entity without the agreement of USF&G or an order of the Court.  Said proceeds

stemming from Bonded and Non-Bonded projects may be used to pay any expenses referenced in

Paragraph 17

Dated:                                                          _____

                                                                        Honorable Nathaniel M. Gorton
                                                                        United States District Judge

G:\DOCS\JUO\St Paul Travelers\Pleadings\Proposed Order 8.3.doc

9

## Exhibit A

### List of Bonded Contracts and Projects

**Owner:** City of Lowell, 375 Merrimack Street, Lowell, MA  01852
**Project:** Kathryn M. Stoklosa Middle School, 560 Broadway Street, Lowell, MA 01852


**Owner:** Town of Hull - School Building Committee, 7 Hadassah Way, Hull, MA  02045
**Project:** Hull High School

**Owner:** City of Waltham, 610 Main Street, Waltham, MA  02452
**Project:** New Plympton Elementary School

**Owner:** Town of Winchester, 71 Mount Vernon Street, Winchester, MA  01890
**Project:** Ambrose Elementary School

**Owner:** City of Woburn, 10 Common Street, Woburn, MA 01801
**Project:** White Elementary School

**Owner:** Olin College
**Project:** Olin College - East Hall Dormitory

**Owner:** Boston University, Inc., 233 Baystate Road, Boston
**Project:** B'nail B'rith Hillel House at Boston University, Inc

**Owner:** Worcester State College
**Project:** College Classroom Building

G:\DOCS\SSS\Paul Travelers\Other Proposed Order\ExA.doc

## Exhibit B

### List of Non Bonded Contracts and Projects

**Owner:**   **Town of Shrewsbury, 45 Maple Street, Shrewsbury, MA 01545**
**Project:**   **Shrewsbury Middle School -- West**

**Owner:**   **Town of Westford, Westford, MA**
**Project:**   **New Highway Facility**

**Owner:**   **Harvard College, Cambridge, MA**
**Project:**   **Shell and Core**

**Owner:**   **Harvard College, Cambridge, MA**
**Project:**   **Fitout**

G:\DOC'S\SSE\ST Paul Travelers\Other\Proposed Order\xB.doc